# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MICHAEL P. VESCO,

       Plaintiff,

v.                                                                                                Civil No. 00-1805 WJ/LCS (ACE)

PATRICK SNEDECKER, Chief of Security, Lea
County Correctional Facility ("LCCF"),
WACKENHUT CORRECTIONS CORPORATION,
JOE R. WILLIAMS, Chief Warden, LCCF,
CAPT. MICHAEL SOLIZ, LCCF,
SGT. SHANNON MANNING, LCCF
LEA COUNTY, NEW MEXICO,
NEW MEXICO DEPARTMENT OF CORRECTIONS,
ROBERT PERRY, Secretary of Corrections,
JOHN SHANKS, Director of Adult Prisons,
LAWRENCE TAFOYA, Warden, SNMCF,
LUPE MARSHAL, Associate Warden, SNMCF,
KATHLEEN HODGES, Mental Health Services
Director, SNMCF,

       Defendants.

## MEMORANDUM OPINION AND ORDER ASSESSING FEES AND COSTS

THIS MATTER comes before the Court following a hearing on State Defendants'[1] Motion for Fees and Costs to be Assessed Against Attorney Livingston, filed May 16, 2002 (**Doc. 107**), and State Defendants' Motion to Tax Costs in the Amount of $1,670.50, filed April 29, 2002 (**Doc. 102**). In this action, Mr. Paul Livingston represented Plaintiff Michael P. Vesco, a prison inmate who asserted various civil rights actions against the Defendants. By mid-December,

---

[1] State Defendants are New Mexico Corrections Department, Robert Perry, John Shanks, Lawrence Tafoya, Lupe Marshall and Kathleen Hodges and will be referred to herein as "Defendants" or "State Defendants."

2001, Defendants filed numerous dispositive motions, to which no responses were filed. In a letter dated January 16, 2002, Plaintiff, acting on his own behalf, requested the Court to dismiss his case without prejudice due to a "conflict of interest" with counsel. *See Doc. 92*. In an attempt to jumpstart the case, a status conference was held on January 31, 2002, where Mr. Livingston represented to both the Court and other parties that he was still acting as Plaintiff's counsel.

The case was eventually dismissed on the basis that Plaintiff had failed to administratively exhaust his remedies as required by the Prisoner Litigation Reform Act ("PLRA"). *See Booth v. Churner*, 531 U.S. 956 (2001) *(Docs. 100, 101)*. After the case was dismissed, Plaintiff through Mr. Livingston filed a motion for Rule 11 sanctions (*Doc. 104*) which lodged accusations against Defendants for filing "sham" summary judgment motions and for allegedly interfering with his attorney-client relationship during early settlement negotiations. Defendants attempted to resolve the issue by offering to refrain from filing a motion for fees and costs if Mr. Livingston withdrew the motion for sanctions, *Tr. at 68*, -- an offer Mr. Livingston unwisely declined.[2]

A hearing was held on June 4, 2002 to address Defendants' motion for fees and costs and Plaintiff's motion for Rule 11 sanctions.[3] Defendants requested that sanctions be imposed under 28 U.S.C. §1927, which provides that any attorney who multiplies proceedings "unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." After listening to counsel's arguments, I granted Defendants' motion, finding that Mr. Livingston's conduct, *vis à vis*

---

[2] Reference to "*Tr.*" are to the Transcript of the June 4, 2002 hearing.

[3] Plaintiff's motion for sanctions was denied in a separate Order. (*Doc. 114*).

opposing counsel as well as his own client, falls squarely within the parameters for conduct proscribed by 28 U.S.C. § 1927. This memorandum opinion and order memorializes those findings regarding Mr. Livingston's conduct which I find to be sanctionable:

*Actively obstructing settlement:* Mr. Livingston opposed an early settlement of the case, against the insistence and express wishes of his client, in order to further his own financial self-interest. Mr. Livingston threatened his client with an attorney's lien on his house if he accepted the settlement offer. *See Defts' Mot. for Atty's Fees, Ex. 10.* His actions in thwarting the settlement process constitute what appears to this Court to be flagrant violations of the Rules of Professional Conduct, 16-102 (NMRA) (obligation to abide by client's decision whether to accept an offer of settlement). Any proprietary interest Mr. Livingston feels he acquired in the action by virtue of a contingency fee arrangement certainly does not include an interest obtained in the course of coercing a client who does not wish to follow counsel's advice on whether to settle a case. *See* N.M.R.A. 16-108(J).

*Failing to withdraw from representation when conflict existed:* Mr. Livingston's statements regarding whether or not he represented Mr. Vesco are both elusive and disingenuous. He shifts from a state of representation to non-representation, whichever is more advantageous to the issue at hand, in attempts to excuse his conduct. Mr. Livingston stated that he was counsel of record for Mr. Vesco: in a notice to the Court on October 16, 2001 (*Doc. 55*); at a settlement conference before Magistrate Judge Leslie Smith on November 27, 2001; at a status conference on January 31, 2002 before the undersigned; in his motion for sanctions against Defendants; and in his statements to the Court on June 4, 2002, *Tr. at 45-46, 68.* Conversely, Mr. Livingston stated on the record in open court that Plaintiff fired him in September of 2001, yet Mr.

3

Livingston stated that he did not file a motion to withdraw because he felt that Plaintiff needed protection from what he thought was a "bogus deal." *Tr. at 39.* Mr. Livingston also told the Court that he was not in fact affirmatively discharged because all Mr. Vesco did was "write letters to the court and to the clerks and to the judges." *Tr. at 40.*

At the June 4, 2002 hearing, Mr. Livingston stated that he did not respond to Defendants' summary judgment motions because Plaintiff had fired him and thus was no longer Plaintiff's counsel. *Tr. at 39.*[4] Mr. Livingston also stated that he had "no interest in representing Mr. Vesco's interests at this point," *Tr. at 5.* Although Mr. Livingston embarked on this case under a contingency fee arrangement, Plaintiff's letter of termination should have raised a red flag as to Mr. Livingston's ability to adequately further represent his client. Attorney Livingston's equivocal statements concerning the status of his legal representation of Plaintiff indicates to this Court that Mr. Livingston felt that his ability to represent his client was compromised, but failed to act responsibly and in accordance with the Rules of Professional Conduct which govern the practice of law. *See 16-107 NMRA (conflict of interest).*

***Failure to prosecute:*** Following the breakdown of settlement negotiations primarily due to Mr. Livingston's refusal to abide by his client's desire to settle, Mr. Livingston propounded no discovery requests, took no depositions, and did not respond to any of Defendants' motions. Mr. Livingston offers several rationales for this conduct, including that he no longer represented Plaintiff (contrary to the representations he has made at different times to this Court, as mentioned

---

[4] Still another explanation for Mr. Livingston's failure to respond to Defendants' motions is that he felt they were "sham motions" not worthy of response. *See Mem. in Sup. of Mot. for Sanctions, ¶ 32* (Doc. 105). The Court does not agree with Mr. Livingston's characterization of these motions.

above); that he was eliminating some of the litigation expense by keeping the proceedings on a "reasonable level," *Tr. at 49-50*; and that it simply wasn't worth spending any of his own money on his client for discovery, since his client had threatened to put him in jail for extortion. *Tr. at 45*; *see also Defts' Mot. for Atty's Fees, Ex. 9* (letter by Plaintiff accusing Mr. Livingston of "unethical practices and extortion," advising of termination and agreeing to settle the case for $2,500.00).[5]

***Causing multiple filings and vexatious conduct:*** Defendants were required to respond to a motion for a protective order Mr. Livingston served but never filed. He then ignored Defendants' letter which inquired into why the motion had never been filed. *Tr. at 18; Exs. 8 & 9.*[6] This case also involved considerable time and expense on Defendants' part in setting up a procedure for unmonitored phone calls between Mr. Livingston and his client that were never used. *Tr. at 17-18.*[7] Defendants made it possible for Plaintiff, a prison inmate, to attend a routine Rule 16 conference at Mr. Livingston's insistence, only to have Mr. Livingston call on the

---

[5] At an early point in the settlement negotiations, Defendants offered $8,000.00 to settle the case. *Tr. at 75*.

[6] At the hearing, Mr. Livingston offered no testimony to challenge Defendants' testimony on this issue.

[7] Mr. Livingston was having weekly phone contact with his client through monitored collect calls from the Southern New Mexico Correctional Facility. This Court had intervened to require Defendants to provide Mr. Livingston with a special form to allow unmonitored phone contact. Mr. Livingston never returned the completed form, and although he eventually was able to make unmonitored calls to Mr. Vesco through his client's case worker at the prison, Mr. Livingston never informed opposing counsel that the issue had been resolved. *Tr. at 18, 31, 76*. According to Defendants' statement of services rendered, the phone call issue cost Defendants and ultimately, taxpayers, $1,400.00. *See Defts' Ex. 12*.

morning of the conference and change his mind.[8]

Mr. Livingston attempts, albeit unsuccessfully, to divert blame for his conduct onto the Defendants. He accuses Defendants of unethical practice in allowing Plaintiff to communicate by letter directly with one of the Defendants, John Shanks, without Mr. Livingston being present. Contrary to Mr. Livingston's representations, this Court is unaware of any Rule of Professional Conduct that prevents parties in civil litigation from conferring with one another outside the presence of their attorneys. *Tr. at 33*.[9] Further, when counsel for Defendants became aware of the letter two months after Mr. Vesco had written it, he immediately sent a copy to Mr. Livingston. An equally specious argument is Mr. Livingston's characterization of the summary judgment motions filed by Defendants. First, had Mr. Livingston abided by Plaintiff's desire to settle the case (at which point Defendants had already invested over $20,000.00), Defendants would not have had to file the numerous dispositive motions. Second, Defendants were fast approaching the Court's dispositive motion deadline and as counsel for Defendants correctly observed at the hearing, federal court deadlines for dispositive motions are not to be ignored. *Tr. at 75-76*. Third, based on the Court's review of the motions on their merits, they were neither

---

[8] Mr. Livingston explained that when he realized that the other parties were attending by phone, he decided his client did not need to come to the courthouse. What Mr. Livingston does not explain is why he felt his client, an incarcerated inmate, needed to attend a Rule 16 scheduling conference in the first place, given the special considerations and expense involved in getting him there. *Tr. at 30.*

[9] While there could be reason for concern if New Mexico Department of Corrections officials were initiating contact with an incarcerated inmate who was suing them, in the instant case Mr. Vesco was the party who contacted Defendant John Shanks.

frivolous nor "sham motions."[10]

Three substantial requirements must be met before liability may be imposed under § 1927: (1) a multiplication of proceedings by an attorney or other person; (2) conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings. *Compana v. Muir*, 615 F.Supp. 871, 894 (M.D.Pa.1985), aff'd, 786 F.2d 188 (3rd Cir.1986), *Hidahl v. Gilpin County Dep't of Soc'l Serv.*, 699 F .Supp. 846, 849 (D.Colo. 1988). I find that Mr. Livingston's conduct is squarely within the purview of conduct which § 1927 attempts to discourage and for which sanctions are warranted. *See*, *e.g. Julien v. Zeringue*, 864 F.2d 1572 (Fed.Cir. 1989)(conduct was vexatious where attorney missed deadlines and requested at least 10 extensions of time to file his briefs); *Lee v. First Lenders Serv., Inc.*, 236 F.3d 443 (8th Cir. 2001) (causal connection existed between the objectionable conduct of counsel and multiplication of the proceedings where counsel initially vigorously litigated the case, permitted the case to proceed with discovery and motion practice and then abandoned the case);[11] *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1381 (5th Cir. 1979) (failure to answer interrogatories as ordered, failure to file briefs on two occasions when requested to by the court, and failure to advise clients of their denomination as class representatives and the possible consequences of class

---

[10] As the Court stated at the hearing, in the interest of judicial economy, summary judgment was entered against Plaintiff for failure to exhaust administrative remedies. Considering that Mr. Livingston never responded to the other summary judgment motions, Defendants in all likelihood would have prevailed on the other motions. *Tr. at 21*.

[11] Defense counsel has accurately summed up Mr. Livingston's representation in the case: ". . . the only thing that it appears that Mr. Livingston has done for his client in this case is file a complaint, file a first amended complaint, and harass the defendants with collateral issues that really don't get to the merits of the case." *Tr. at 20*.

7

representation was considered unreasonable and vexatious multiplication of the proceedings).

Mr. Livingston does not share either this Court's view, or opposing counsel's view, of his conduct. Nevertheless, sanctions under § 1927 do not hinge on a showing of subjective bad faith. They are warranted upon conduct which, when viewed *objectively*, manifests an "intentional or reckless disregard of the attorney's duties to the court." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987). That threshold has been more than adequately satisfied in this case. Further, the offensiveness of Mr. Livingston's conduct is magnified by the fact that he is no stranger to warnings and sanctions imposed against him in this Court by other judges. I submit the following examples as some support for the severity of the sanctions which I am imposing. In all of these cases, Mr. Livingston represented the plaintiff(s):

(1) Civil No. 97-1348 JP/RLP : Chief District Judge James A. Parker adopted Magistrate Judge Lorenzo F. Garcia's recommendation of formal reprimand and strong admonishment for failure to file responses to motions and for filing frivolous claims (Docs. 35 & 38).[12] Judge Parker warned Mr. Livingston that "if he persists in this type of misconduct in other cases, the judge to whom that case is assigned could impose more punitive sanctions, including referring [his] conduct to the Disciplinary board. . . and/or to the Committee on Admissions and Grievances. . . ." The Order was affirmed by the Tenth Circuit in *Chavez et al v. City of Albuquerque*, 2000 WL

---

[12] As yet another example, in Civil No. 97-1348, Judge Garcia was not convinced that a "simple fine" would serve as an "effective deterrent" in Mr. Livingston's case, since he noted Mr. Livingston had previously been sanctioned with a fine in *Chavez v. Bennett Propp et al.*, Civil No. 96 -1656 SC/JHG for the same conduct. *See Civil No. 97-1348 JP/RLP, Doc. 35, Recommended Disp., at 6*.

1508835 (10th Cir.).[13]

(2) Civil No. 96-1581 MV/LFG *[Attachment B to RD]*: Judge Garcia warned Mr. Livingston of potential violations in a Rule 16 conference in naming improper parties to a lawsuit. Mr. Livingston had been on notice about ignoring legal precedent on this issue in other cases. *See Attachments D, E and G.*

(3) Civil No. 96-1421 JC/LFG *[Attachment H to RD]*: District Judge John E. Conway warned Mr. Livingston about the necessity of responding to a dispositive motion. Mr. Livingston was put on notice that "this type of behavior is not acceptable and will not be tolerated in the future."

(4) Civil No. 96-1656 SC/JHG *[Exs 13 & 14]*: District Judge Santiago E. Campos imposed a sanction of $5,000.00 for a Rule 11 violation and awarded attorney's fees in the amount of $5871.50. Judge Campos adopted the recommendation of Magistrate Judge Joe H. Galvan regarding attorney's fees, but increased the recommended sanction of $2,000.00 to $5,000.00 . The Tenth Circuit affirmed Judge Campos' order.

(5) Civil No. 00-1305 JP/WWD *[Doc. 69]*: Judge Parker sanctioned Mr. Livingston for fees and costs for failing to timely file a response to Defendants' motion for partial summary judgment.

(6) Civil No. 00-651 LH/WWD *[Response to plaintiff's Motion to Reconsider Dismissal of Claims, Doc. 46]*: This was a companion case in a lawsuit filed by fifteen inmates who were transferred by the New Mexico Department of Corrections to Wallens Ridge State Prison

---

[13] In his Recommended Disposition, Judge Garcia attached other cases involving sanctions imposed against Mr. Livingston by judges in this district. These attachments are referenced as "Attachment ___ to RD."

9

("WRSP") in Virginia. Mr. Livingston failed to file a total of 35 responses in these cases. District Judge C. LeRoy Hansen summarily dismissed the cases (Doc. 44) on the grounds that Plaintiff had failed to respond to any of Defendants' dispositive motions.[14]

(7) Civil No. 00-1227 LH/WWD *[one of WRSP cases, attached as Ex. A to the Response to Motion to Reconsider, Doc. 46]*: Chief Magistrate Judge William W. Deaton set a hearing on a motion for an order to show cause, based on Plaintiffs' "continued refusal to participate in the discovery process and their refusal to comply with discovery orders entered by the court." *At 2*. At the hearing, Judge Deaton opted for the "less severe" solution of allowing Defendants additional time for discovery instead of dismissal. *Tr. of 9/18/01 Hearing, at 17-18*.

The above examples indicate that, contrary to Mr. Livingston's protestations that he has learned his lesson, *Tr. at 61* -- he has not. Mr. Livingston's pattern of conduct in this case has caused additional expense for the litigating parties and counsel. Furthermore, Mr. Livingston's conduct has resulted in a tremendous waste of time and resources for all parties concerned including the Court, which is already burdened with a chronic overload of southwest border cases. *See Court's Ex. A (*"2001 Federal Court Management Statistics, published by the Office of Human Resources, Statistics Division, Administrative Office of the United States Courts"). I find that the amount of fees and costs requested by Defendants in the amount of $26,769.78 is reasonable for the hourly rates and number of hours for services rendered. This amount does not include additional fees and costs incurred after January, 2002 when the motions briefing was completed.

---

[14] For two of the dismissed claims, responses were filed, but one day after the Court's deadline set out in an Order to Show Cause, and six months after the original motions were filed.

*State Defendants' Motion to Tax Costs*

State Defendants also seek costs as allowable under 28 U.S.C. § 1920 in the amount of $1670.50 which is pending further ruling by the Clerk of Court (Doc. 102). At the June 4, 2002 hearing, counsel for State Defendants represented to the Court that the costs in this motion are included in their Motion for Fees and Costs under 28 U.S.C. § 1927. Counsel also recognized that a ruling in their favor of the motion under § 1927 would preclude a recovery for costs under § 1920.[15] Thus, my disposition of the matter renders moot the motion to tax costs.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Fees and Costs to be Assessed Against Attorney Livingston **(Doc. 107)** is hereby GRANTED in that Mr. Paul Livingston is sanctioned and directed to personally pay **$26,769.78** representing fees and expenses incurred by Defendants in the course of this litigation. Accordingly, judgment in the amount of **$26,769.78** shall issue in favor of State Defendants and against Paul Livingston, individually, with post judgment interest at the statutory rate from the date of entry of said judgment until paid;

**IT IS FURTHER ORDERED** that State Defendants' Motion to Tax Costs in the Amount of $1,670.50 **(Doc. 102)** is DENIED AS MOOT;

**IT IS FINALLY ORDERED** that the Clerk of Court is directed to serve a copy of this Memorandum Opinion and Order on Plaintiff Michael P. Vesco.

_____
UNITED STATES DISTRICT JUDGE

---

[15] Defendants may collect costs under *either* 28 U.S.C. § 1920 or § 1927, but not both. *See Roadway Express, Inc., v. Piper,* 447 U.S. 752, 757-61(1980) (costs recoverable under § 1927 are limited to costs that can be awarded under § 1920).